1  FREEDMAN & TAITELMAN, LLP
   Bryan J. Freedman, Esq. (SBN 151990)
2  Jesse Kaplan, Esq. (SBN 255059)
   1901 Avenue of the Stars, Suite 500
3  Los Angeles, California 90067
   Tel: (310) 201-0005
4  Fax: (310) 201-0045

5
   Attorneys for Plaintiff Mario Lavandeira, dba Perez Hilton
6

7

8  **UNITED STATES DISTRICT COURT**

9  **CENTRAL DISTRICT OF CALIFORNIA**

10

11 MARIO LAVANDEIRA, dba PEREZ ) **CASE NO.: CV 08-04764 GAF**
   HILTON, an individual,         ) **(AJWx)**
12                                )
                Plaintiff,        ) PLAINTIFF MARIO LAVANDEIRA'S
13                                ) OPPOSITION TO DEFENDANT
   v.                             ) ELIZABETH SILVER'S CROSS-
14                                ) MOTION
   INFUSE, LLC, a New Jersey Limited )
15 Liability Company d/b/a        ) [Opposition to Motion for Attorney Fees
   www.perezrevenge.com; MARGIE E. ) and Sanctions and Declaration of Bryan
16 ROGERS; ELIZABETH SILVER-      ) J. Freedman in Support Thereof
   FAGAN aka ELIZABETH SILVER;    ) concurrently herewith]
17 and DOES 1 through 10, inclusive, )
                                   )
18              Defendants.        )
                                   )
19 _____  )

20
21     Plaintiff Mario Lavandeira, dba Perez Hilton ("Plaintiff") respectfully submits
22 this Memorandum of Points and Authorities in support of his opposition to defendant
23 Elizabeth Silver's ("Silver") cross-motion.
24 ///
25 ///
26 ///
27 ///
28

## I. Introduction.

Silver seeks all the benefits of conducting her business through corporate defendant Infuse, LLC ("Infuse"), without having to take any accountability for Infuse's actions. Silver believes that she can insulate herself from personal liability by using Infuse to infringe on Plaintiff's intellectual property, allow Plaintiff to take a default against Infuse by failing to appear by counsel, then attempt to prohibit Plaintiff from actually prosecuting his action against Infuse by dissolving that entity.

Silver's latest cross-motion exhibits her clear intention to prevent Plaintiff from prosecuting his claims against Infuse. Though Silver apparently seeks to set aside Infuse's default, Silver had failed to provide any indication that it intends to participate in this litigation here, New York, or any other forum.[1] Rather, through this motion and her dissolution of Infuse, Silver seeks to render Infuse immune from prosecution.

## II. Silver Cannot Appear on Infuse's Behalf.

Silver cannot represent corporate defendant Infuse or appear on its behalf. As such, she cannot move to set aside the entry of default against Infuse, move to vacate any default judgment against Infuse, transfer the matter, or oppose the motion for a default judgment against Infuse.

Corporate entities, including limited liability companies, may appear in federal court only through licensed counsel. *See Foley v. Allied Interstate, Inc.*, 312 F. Supp. 2d 1279 (C.D.Cal. 2004), *citing In re Highley*, 459 F.2d 554, 555 (9th Cir. 1972) ("A corporation can appear in a court proceeding only through an attorney at law."). On numerous occasions, Judge Schiavelli advised Infuse and Silver of this requirements, and provided Infuse with multiple opportunities to obtain representation. In fact,

---

[1] Infuse has failed to appear by counsel in the New York Matter. (See Freedman Decl., ¶34).

2

PLAINTIFF MARIO LAVANDEIRA'S OPPOSITION TO DEFENDANT
ELIZABETH SILVER'S CROSS-MOTION

Judge Schiavelli provided Infuse with additional time to do so. Despite, Judge Schiavelli's warnings, Infuse refused to retain counsel. After Silver indicated that she did not intend to retain counsel, the Court directed Plaintiff to enter default against Infuse (*see* Freedman Decl., ¶9, Ex.3).

Now, Silver is once again attempting to vitiate the same requirement and appear on behalf of Infuse. Silver relies on *Eyak Native Village v. Exxon Corp.*, 25 F.3d 773, 777 (9th Cir. 1994), which holds that a that a nonparty's interests must be "directly affected" to raise a claim of fraud on the court. This holding is extremely limited and does not stand for the broad proposition that because Silver owns Infuse or is its successor in interest, she can sidestep the requirement that Infuse appear by counsel. *See Herring v. FDIC*, 82 F.3d 282, 285 (9th Cir. 1995) (holding that a corporations shareholders did not have standing to assert a fraud on the court claim under Rule 60(b)). In any event, the holding in *Eyak* is limited to Rule 60(b), and does not provide Silver with the ability to appear on Infuse's behalf as to all matters before this Court.

### III. Silver Has Failed to Sustain Infuse's Burden of Setting Aside The Entry Of Default Against Infuse.

Ignoring that Silver cannot appear on Infuse's behalf, Silver has failed to sustain Infuse's burden of setting aside the default against it. Silver incorrectly moves under Rule 60(b) to vacate a default judgment. Rule 60(b), however, applies only after a default judgment has been rendered. Accordingly, the defaulting defendant must seek relief under Rule 55(c) rather than Rule 60(b). *See O'Brien v. R.J. O'Brien Associates, Inc.*, 998 F.2d 1394, 1401 (1993). Rule 55(c) provides that a court may set aside a default for "good cause shown." F.R.C.P. 55(c); *Franchise Holding II, LLC. v. Huntington Rest.'s Group, Inc.*, 375 F.3d 922 (9th Cir. 2004). The "good cause" standard that governs vacating an entry of default under

Rule 55(c) is the same standard that governs vacating a default judgment under Rule 60(b). *See TCI Group Life Ins. Plan v. Knoebber*, 244 F.3d 691, 696 (9th Cir. 2001). The good cause analysis considers three factors: (1) whether the defaulting defendant engaged in culpable conduct that led to the default; (2) whether the defaulting defendant had a meritorious defense; or (3) whether reopening the default judgment would prejudice the Plaintiff. *See TCI Group*, 244 F.3d at 696. This tripartite test is disjunctive. *See In re Hammer,* 940 F.2d 524, 525-26 (9th Cir. 1991). Accordingly, the Court is free to deny the motion "if any of the three factors was true." *American Ass'n of Naturopathic Physicians v. Hayhurst*, 227 F.3d 1104, 1108 (9th Cir. 2000). The defaulting defendant has the burden of establishing that the default should be set aside. *See TCI Group*, 244 F.3d at 697.

### A. Infuse's Culpability

Although the Court went out of its way to allow Infuse to retain counsel and respond to the Complaint, Infuse willfully allowed Plaintiff to enter default against it. A defendant is culpable if it has received actual or constructive notice of the filing of the action and failed to answer. *See Direct Mail Specialists, Inc. v. Eclat Computerized Technologies, Inc.,* 840 F.2d 685, 690 (9th Cir. 1988). In the Ninth Circuit, a defendant's conduct is culpable where there is no explanation of the default inconsistent with a devious, deliberate, willful, or bad faith failure to respond. *See TCI Group Life Ins. Plan v. Knoebber*, 244 F.3d 691, 698 (9th Cir. 2001); *Benny v. Pipes*, 799 F.2d 489, 494 (9th Cir. 1986) (defendants' failure to answer complaint was culpable when defendants had first filed motions to extend their time to answer, indicating an ability to deal with legal requirements); *Kingvision Pay-Per-View Ltd. v. Lake Alice Bar*, 168 F.3d 347, 350 (9th Cir. 1999) (defendant bar owners ignored the summons and complaint despite frequent chats with their lawyers during the period for answer, and filed false affidavits claiming they had not been served); *Alan Neuman Prods. V. Albright,* 862 F.2d 1388, 1390 (9th Cir. 1988) (when served,

defendant "did not admit who he was and refused to accept the papers from the process server, who laid them at [his] feet," and then retained counsel to check the docket for a return of service); *Meadows v. Dominican Republic*, 817 F.2d 517, 522 (9th Cir. 1987) (defendants were culpable in not answering the complaint because they were "aware of the relevant federal law, … fully informed of the legal consequences of failing to respond, … and sufficiently sophisticated and experienced in the requirements of American law to protect [their] interests").

Here, Infuse's failure to respond to the Complaint is nothing less than willful. Like the *Benny* defendants, Infuse was obviously aware of its obligation to respond to the Complaint. On August 13, 2008, Silver attempted to file a motion on behalf of Infuse for an extension of time to respond to the Complaint (*see* Freedman Decl., ¶4). On August 20, 2008, the Court issued an Order responding to Silver's application for an extension (*see* Freedman Decl., ¶5, Ex.1). Noting that Silver could not represent Infuse, the Court scheduled a status conference regarding defendants' representation for September 8, 2008 (*see* Freedman Decl., Ex.1). The Court instructed Plaintiff not to enter defaults until that time (*see* Freedman Decl., Ex.1).

On August 25, 2008, Silver again tried to file the same motion on Infuse's behalf. On August 20, 2008, the Court issued another Order responding to Silver's application for an extension (*see* Freedman Decl., ¶7, Ex.2). Again the Court admonished Silver for attempting to appear on behalf of Infuse (*see* Freedman Decl., Ex.2). The Court continued the status conference regarding representation (*see* Freedman Decl., Ex.2).

After being continued several times, on September 26, 2008, all parties appeared for the status conference regarding representation. At that conference, the Court once again advised Silver that Infuse could only appear by counsel and that its failure to do so would result in a default being entered against it (*see* Freedman Decl., ¶8). Silver indicated that Infuse would not do so (*see* Freedman Decl., ¶8). On

September 26, 2008, the Court issued an Order stating in pertinent part as follows: "The Court held a status conference re: the representation of Defendant Infuse, LLC ('Infuse'). Defendant Elizabeth Silver indicated that she did not intend to obtain counsel for Infuse. Plaintiff shall proceed with the entry of default as to Infuse" (*see* Freedman Decl., Ex.3). Accordingly, the Court provided Infuse with multiple opportunities to appear by counsel, and Infuse was clearly aware of its requirements to do so.

Moreover, despite the clerk's entrance of default against Infuse on September 30, 2009, Infuse has made no efforts to appear in this action or set aside the default against it until Plaintiff filed his motion for a default judgment. In fact, Infuse still has failed to indicate any intention to appear in this action or the New York action. Rather, Silver is attempting to shield Infuse from liability by dissolving it after Plaintiff filed suit against it in New York.[2] Infuse has no intention of attempting to litigate the merits of Plaintiff's claims in this or any other jurisdiction. Accordingly, Infuse's default is undoubtedly a result of its culpable conduct.

### B. Infuse's Purported Meritorious Defense.

Despite Silver's claim that this Court lacks personal jurisdiction over Infuse, Silver has made it abundantly clear that Infuse has no intention of defending Plaintiff's claims in this or any other jurisdiction. As discussed, after Plaintiff filed a suit against Infuse in New York, Silver dissolved the company in an obvious attempt to avoid litigating Plaintiff's claims on the merits and shielding Infuse from liability. At a minimum, Silver seeks to merely delay the inevitable: a default judgment against Infuse.

---

[2] Silver misrepresents the nature of the suit that Plaintiff has filed in the Southern District of New York. Plaintiff does not allege the same causes of action against Infuse as it did in this action. Rather, Plaintiff only alleges causes of action for copyright infringement and violation of the Digital Millennium Copyright Act against Infuse. (See Freedman Decl., ¶33).

1  Even if the Court is going to consider Infuse's belated personal jurisdiction defense, as discussed in plaintiff's opposition to Silver's motion for sanctions, this Court may exercise jurisdiction over Infuse based on both its purposeful direction of commercial activities to California consumers, and public representation's on the website's Myspace page that its editor was located in Los Angeles, California. Silver disingenuously claims that Plaintiff has conceded that jurisdiction does not exist over Infuse in California. Silver apparently relies on Plaintiff's allegations that Infuse is subject to personal jurisdiction in New York. Plaintiff's allegation that Infuse is subject to jurisdiction in New York is hardly a concession that Infuse is not subject to jurisdiction in California. Infuse is subject to jurisdiction in both New York and California.

As discussed in more detail in Plaintiff's opposition to Silver's motion for sanctions, defendants, including Silver, utilize the Infringing Website as a marketing tool to promote various events and nightclubs towards California consumers, in particular the "Hollywood Community." In addition to trying to sell these California events the Infringing Website encourages visitors to "join" so that defendants can direct market their "products". Defendants essentially invite the "Hollywood Community" to not only visit the website, but use it as a public relations vehicle to promote their projects, clients, and events.

Defendants' apparent connection to Southern California's entertainment industry is further underscored by the Infringing Website's MySpace page which indicates that the Infringing Website, or at least it's editor "M" (Probably defendant Margie Rogers) is located in Los Angeles, California.

### C. Prejudice to the Plaintiff

Silver's proposed vacation of the entry of default against Infuse would have the practical effect of precluding Plaintiff from prosecuting his causes of action against Infuse. As discussed, Infuse has no intention of defending Plaintiff's claims on the

7

PLAINTIFF MARIO LAVANDEIRA'S OPPOSITION TO DEFENDANT
ELIZABETH SILVER'S CROSS-MOTION

merits. Rather, by undertaking dilatory tactics, such as dissolving Infuse, Silver is taking the position that Infuse is not only judgment proof, but cannot be sued. As Infuse was the owner of the Infringing Website and infringing marks, at least as of December 18, 2008, Plaintiff is entitled to a judgment against it. If Plaintiff cannot obtain a default judgment against Infuse, Plaintiff will be precluded from ever obtaining a judgement against a company that is refusing to participate in the litigation process. At a minimum, Plaintiff will have to go through the same exercise in the Southern District of New York.

Moreover, that Plaintiff may still prosecute his claims against Silver does not afford Plaintiff with adequate relief. Plaintiff is entitled to obtain relief from Infuse based on Infuse's conduct. That existence of other liable parties should not preclude plaintiff from obtaining a default judgment from Infuse, which refuses to participate in this litigation. Accordingly, Plaintiff will be prejudiced by its inability to prosecute its claims against Infuse.

## IV. Transfer is Not Appropriate Under 28 U.SC. § 1404(a).

If the Court grants Plaintiff's motion for a default judgment, there will obviously be nothing to transfer to the Southern District of New York. If, however, the Court sets aside the default against Infuse or denies plaintiff's motion for a default judgment, Plaintiff consents to the transfer of this action to the Southern District of New York.

## V. Silver's Request For Sanctions.

As discussed in more detail in Plaintiff's opposition to Silver's motion for sanctions, Silver's request for sanctions is both procedurally and substantively deficient.

///

| | |
|---|---|
| Dated: February 2, 2009 | FREEDMAN & TAITELMAN, LLP |
| | By: _____ |
| | Bryan J. Freedman, Esq.<br>Attorneys for Plaintiff Mario Lavandeira,<br>dba Perez Hilton |

PLAINTIFF MARIO LAVANDEIRA'S OPPOSITION TO DEFENDANT ELIZABETH SILVER'S CROSS-MOTION